**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LINDA LOZANO** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **CIVIL ACTION NO. 4:17-CV-03447** |
| **vs.** | § | |
| | § | |
| | § | |
| **LYONDELL CHEMICAL COMPANY** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

**EVERSHEDS-SUTHERLAND (US), LLP**
Marlene C. Williams
Attorney-in-Charge
Fed. ID No. 22824
State Bar No. 24001872
1001 Fannin, Suite 3700
Houston, TX 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
MarleneWilliams@eversheds-sutherland.com

OF COUNSEL
Scott R. McLaughlin
Fed. ID No. 18138
State Bar No. 00791234
John T. Hays
Fed. ID No. 3015861
State Bar No. 24101885
1001 Fannin, Suite 3700
Houston, TX 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
ScottMcLaughlin@eversheds-sutherland.com
JohnHays@eversheds-sutherland.com

**ATTORNEYS FOR DEFENDANT**
**LYONDELL CHEMICAL COMPANY**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS ..........................................2

III.   ISSUES TO BE RULED ON BY THE COURT ................................................2

IV.    STATEMENT OF UNDISPUTED FACTS .......................................................3

     A.   Plaintiff's Employment with Lyondell ...................................................3

     B.   Plaintiff's Job Responsibilities as an Administrative Assistant III.........4

     C.   Plaintiff is Assigned to a Performance Improvement Plan......................5

     D.   Lyondell Investigates Plaintiff's Claims of Race and Age Discrimination............8

     E.   Lyondell Accommodates Plaintiff's Absence and Extends the PIP .......................9

     F.   During her Deposition, Plaintiff Fails to Identify any Specific Instances of
           Alleged Discrimination........................................................................11

     G.   Plaintiff Spoliates Potentially Relevant Evidence on the Eve of Her Deposition .12

V.     STANDARD OF REVIEW ...............................................................................13

VI.    ARGUMENTS AND AUTHORITIES.............................................................14

     A.   Plaintiff's Title VII, TCHRA and Section 1981 Race Claims Fail as a Matter of
           Law   ......................................................................................................14

          1.   Plaintiff Cannot Make a Prima Facie Case of Discrimination..................14

               a.   The Only Adverse Employment Action at Issue is Plaintiff's
                    Termination...................................................................................14

               b.   Plaintiff Cannot Establish That Lyondell Treated Her Less
                    Favorably Than Similarly Situated Employees Under Nearly
                    Identical Circumstances ................................................................16

          2.   Lyondell Terminated Plaintiff for a Legitimate Nondiscriminatory
               Reason..........................................................................................16

           3.   Plaintiff Cannot Show that Lyondell's Reason for Terminating Her
               Employment was Pretext for Discrimination.............................................17

     B.   Plaintiff's ADEA and TCHRA Age Claims Fail as a Matter of Law...................19

          1.   Plaintiff Cannot Make a Prima Facie Showing Under the ADEA or
               TCHRA ........................................................................................19

          2.   Assuming Plaintiff Makes a Prima Facie Case, Lyondell had a Legitimate
               Nondiscriminatory Reason for Her Termination and Plaintiff Cannot Show
               Pretext ..........................................................................................20

     C.   Plaintiff's FMLA Retaliation Claims Fail as a Matter of Law .............................21

          1.   Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under the
               FMLA .........................................................................................21

2.      Even if Plaintiff Makes a Prima Facie Case, Lyondell had a Legitimate Non-Retaliatory Reason for the Termination and Plaintiff Cannot Show Pretext ............................................................................................................22

D.      The Court Should Dismiss Plaintiff's Claims as a Sanction for Spoliation of Evidence.................................................................................................................23

VII.    CONCLUSION.........................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acker v. Gen. Motors, L.L.C.*,
    853 F.3d 784 (5th Cir. 2017) ......................................................................21, 22

*Agoh v. Hyatt Corp.*,
    992 F.Supp. 2d 722 (S.D. Tex. 2014) ...........................................................15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505 (1986)...........................................................13

*Auguster v. Vermillion. Parish Sch. Bd.*,
    249 F.3d 400 (5th Cir. 2001) .........................................................................18

*Boudreaux v. Swift Transp.*
    402 F.3d 536, 540 (5th Cir. 2005) .................................................................13

*Burger v. Central Apartment Mgmt., Inc.*,
    168 F.3d 875 (5th Cir. 1999) .........................................................................15

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548 (1986)...........................................................13

*Chamblee v. Miss. Farm Bureau Fed'n*,
    551 Fed. Appx. 757 (5th Cir. 2014)...............................................................14

*Cox v. Univ. of Texas MD Anderson Cancer Ctr.*,
    2010 WL 3825411 (S.D. Tex. Sept. 28, 2010) ............................................17, 18

*Forsyth v. Barr*,
    19 F.3d 1527 (5th Cir. 1994) .........................................................................13

*Francisco v. Sw. Bell Tel. Co.*,
    2016 WL 3974820 (S.D. Tex. July 25, 2016).................................................22, 23

*Hammad v. Dynamo Stadium, LLC*,
    2015 WL 6965215 (S.D. Tex. Nov. 10, 2015) ..............................................24

*Heggemeier v. Caldwell Cty.*,
    826 F.3d 861 (5th Cir. 2016) .........................................................................16

*Jackson v. Cal-W Packaging Corp.*,
    602 F.3d 374 (5th Cir. 2010) .........................................................................19, 22

*Lee v. Kansas City S. Ry. Co.*,
  574 F.3d 253 (5th Cir. 2009) ...................................................................................14, 16

*Martin v. Kroger Co.*,
  65 F. Supp. 2d 516 (S.D. Tex. 1999) .................................................................................15

*Mayberry v. Vought Aircraft Co.*,
  55 F.3d 1086 (5th Cir. 1995) ...................................................................................17, 20

*Moss v. BMC Software*,
  610 F.3d 917 (5th Cir 2010) ...................................................................14, 19, 20, 21

*Obasogie v. Harris Cty. Hosp. Dist.*,
  2013 WL 6916246 (S.D. Tex. Dec. 31, 2013)......................................................................13

*Okoye v. Univ. of Tex. Houston Health Science Ctr.*,
  245 F.3d 507 (5th Cir. 2001) .................................................................................18

*Quantlab Techs. Ltd. (BGI) v. Godlevsky*,
  2014 WL 651944 (S.D. Tex. Feb. 19, 2014) ......................................................................24

*Rachid v. Jack in the Box, Inc.*,
  376 F.3d 305 (5th Cir. 2004) .................................................................................14

*Reed v. Neopost USA, Inc.*,
  701 F.3d 434 (5th Cir. 2012) ...................................................................2, 14, 20, 21

*Richardson v. Monitronics Int'l, Inc.*,
  434 F.3d 327 (5th Cir. 2005) .................................................................................21

*Shakelford v. Deloitte & Touche*,
  190 F.3d 398 (5th Cir. 1999) .................................................................................2

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993)...............................................................................................14

*Thomas v. Johnson*,
  788 F.3d 177 (5th Cir. 2015) .................................................................................17

*Thompson v. Exxon Mobil Corp.*,
  344 F. Supp. 2d 971 (E.D. Tex. 2004).................................................................................15

*TIG Ins. Co. v. Sedgwick James of Wash.*,
  276 F.3d 754 (5th Cir. 2002) .................................................................................13

*Turner v. Novartis Pharm. Corp.*,
  442 Fed. Appx. 139 (5th Cir. 2011) (unpublished)................................................................15

*Vadie v. Mississippi State Univ.*,
   218 F.3d 365 (5th Cir. 2000) ............................................................14

*Vaughn v. Woodforest Bank*,
   665 F.3d 632 (5th Cir. 2011) ............................................................18

*Walker v. Thompson*,
   214 F.3d 615 (5th Cir. 2000) ..............................................................2

*West v. Nabors Drilling USA, Inc.*,
   330 F.3d 379 (5th Cir. 2003) ............................................................14

*Willis v. Roche Biomed. Labs.*,
   61 F.3d 313 (5th Cir. 1995) ..............................................................13

**Statutes**

42 U.S.C. § 1981 (Section 1981) ...................................................2, 14, 15, 17

42 U.S.C. §2000e, *et seq*. .......................................................................2

Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq* (ADEA). ....2, 19, 20, 21

Civil Rights Act of 1964 Title VII..........................................................2, 14, 15, 17

Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq* ............................................. *passim*

Texas Commission on Human Rights Act, Texas Labor Code § 21.001 *et seq*. ...........................2

**Other Authorities**

Federal Rules of Civil Procedure Rule 56 ..............................................................1, 13

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant Lyondell Chemical Company ("Lyondell" or the "Company") files this Motion for Summary Judgment ("Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure and respectfully shows the Court as follows:

## I.      INTRODUCTION

The Court should grant Lyondell's Motion and dismiss Plaintiff's claims with prejudice in their entirety. First, as described below Plaintiff cannot make a prima facie case of race discrimination because she does not have any credible evidence that she was treated less favorably than any similarly situated individuals outside her protected class under nearly identical circumstances. Second, Plaintiff cannot make a prima facie case of age discrimination because there is no summary judgment evidence that any of Lyondell's actions against her, including her termination, were because of or motivated by her age. Moreover, Plaintiff's FMLA retaliation claim is equally flawed because there is no credible summary judgment evidence establishing a causal connection between her approved medical leave and her eventual termination. Even if Plaintiff could establish a prima facie case on *any* of her claims, the summary judgment record shows that Lyondell had a legitimate nondiscriminatory/non-retaliatory reason for her termination and Plaintiff cannot show pretext. Specifically, Plaintiff received "less than successful" performance reviews for two consecutive years despite Lyondell's extraordinary efforts to help Plaintiff improve her performance, including providing her multiple extensions on her Performance Improvement Plan ("PIP") deadlines and working closely with her throughout the PIP process to identify methods to improve her performance.  The Company only terminated Plaintiff's employment after she repeatedly failed to correct the deficiencies in critical areas of her job duties.  Based on this record, Plaintiff's claims all fail as a matter of law and Lyondell respectfully requests that the Court grant its Motion and dismiss Plaintiff's claims with prejudice.

1

## II.     NATURE AND STAGE OF THE PROCEEDINGS

Lozano filed this lawsuit on November 10, 2017.[1] Lozano asserts various causes of action including race discrimination under Title VII of the Civil Rights Act of 1964 (as amended) 42 U.S.C. §2000e, *et seq*. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981") and the Texas Commission on Human Rights Act, Texas Labor Code § 21.001 *et seq*. ("Texas Labor Code" or "TCHRA"). Lozano also asserts causes of action under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq* ("FMLA"). The root of Plaintiff's claims is that Lyondell discriminated against her based on her race and age and that Lyondell discriminated and retaliated against her for taking FMLA leave when it allegedly treated her less favorably than younger non-Hispanic employees and ultimately terminated her after she failed to successfully complete her PIP.[2] On December 22, 2017, Lyondell denied all of Plaintiff's claims in its Answer.[3] Discovery closed on November 5, 2018. Lyondell now files this Motion and respectfully requests that the Court dismiss all of Plaintiff's claims against it with prejudice.

## III.     ISSUES TO BE RULED ON BY THE COURT

A.     Whether Plaintiff can establish a prima facie case that Lyondell discriminated against her based on her race pursuant to Title VII, the TCHRA or Section 1981.[4]

B.     Whether Plaintiff can establish a prima facie case regarding her allegation that Lyondell discriminated against her based on her age in violation of the ADEA or the TCHRA.

---

[1] *See* Plaintiff's Original Complaint ("Complaint"), Dkt. No. 1.
[2] *Id.* at ¶¶ 7 through 20.
[3] *See* Lyondell's Answer ("Answer") Dkt. No. 6.
[4] Plaintiff's Section 1981 and TCHRA claims are analyzed under the same evidentiary standard and burden-shifting framework as her Title VII allegations of discrimination based on race. *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000); *Shakelford v. Deloitte & Touche*, 190 F.3d 398, 403 n. 2 (5th Cir. 1999); *Reed Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012)(quoting *Mission Consol. Indep. School Dist. v. Garcia*, 372 S.W.3d 629, 633 (Tex. 2012).

C.  Whether Plaintiff can establish a prima facie case regarding her allegations that Lyondell retaliated against her for FMLA leave and, in doing so, violated the FMLA.

D.  Assuming Plaintiff can establish a prima facie case for any of her claims, whether she is able to show that Lyondell's legitimate nondiscriminatory and non-retaliatory reasons for its actions against her are a pretext for discrimination or retaliation.

E.  Whether the Court should dismiss Plaintiff's claims as a sanction for spoliation of evidence based on her intentional destruction of relevant evidence the night before her deposition in this case.

## IV.  STATEMENT OF UNDISPUTED FACTS

Lyondell, a subsidiary of LyondellBasell Industries, N.V., and its affiliated companies manufacture a variety of chemical products and refine various petroleum products, including gasoline, ultra-low sulfur diesel, jet fuel, aromatics and lubricants.[5] Lyondell is an equal opportunity employer and adheres to all federal, state, and local laws and regulations to which it is subject.[6] Lyondell maintains and strictly enforces an Equal Employment Opportunity Policy and a Harassment and Discrimination-Free Workplace Policy that prohibits discrimination, harassment, and retaliation against an employee for any reason, including based on race and/or age.[7]

### A.  Plaintiff's Employment with Lyondell.

Lyondell hired Plaintiff on July 13, 1987 as a librarian in the Company's Document Library.[8] In 2005, Plaintiff's title changed from Librarian to Department Assistant but the job duties associated with her position did not change.[9] The Company reorganized in 2012 and Plaintiff's position was eliminated.[10] Although her position was eliminated, Plaintiff continued her

---

[5] *See* Declaration of Angela Silvagnoli ("Silvagnoli Dec.") at ¶ 3, attached as Exhibit A.
[6] Silvagnoli Dec. at ¶ 3.
[7] Silvagnoli Dec. at ¶ 3.
[8] Silvagnoli Dec. at ¶ 4.
[9] Silvagnoli Dec. at ¶ 4.
[10] Silvagnoli Dec. at ¶ 4.

3

employment at the Company as an Administrative Assistant III in the Global Projects Department.[11] Plaintiff remained in this position from January 1, 2013 until her termination on September 4, 2015.[12]  At the time of her termination, Plaintiff was sixty-eight (68) years old.[13]

**B.      Plaintiff's Job Responsibilities as an Administrative Assistant III.**

As an Administrative Assistant III, Plaintiff's duties included various forms of clerical office work including compiling reports, maintaining contractor files and compiling timekeeping records for certain projects.[14] Plaintiff's additional responsibilities included ordering supplies, coordinating meetings and lunches for various groups inside the Global Projects Construction Group, and coordinating services with Lyondell's facilities vendors.[15]

As an Administrative Assistant III, Plaintiff worked in multiple areas for the Global Projects Group including the Global Projects Service Center ("Service Center") and another Global Projects Group facility referred to as the Whitehouse ("Whitehouse").[16] In performing her job duties, Plaintiff typically worked with other employees and contractors but she did not report to those individuals – she reported to Mr. Roger Schuering ("Schuering").[17] For example, Plaintiff indicated that she typically received requests for facilities maintenance or meeting support from the Senior Administrative Assistants which, in turn, she would coordinate.[18] However, Plaintiff admitted that she did not report to these Senior Administrative Assistants, one of whom, at the time period in question, was a 46 year old Hispanic woman and the other a 61 year old, African-American woman.[19] Similarly, the Senior Administrative Assistants who coordinated work with

---

[11] *See* Deposition Transcript of Linda Lozano ("Lozano Dep. at __") at 15:9-17; 18:17-18, attached as Exhibit B.
[12] Silvagnoli Dec. at ¶ 4.
[13] Dkt. No. 1 at ¶ 8.
[14] Lozano Dep at 19:19-21:13.
[15] Lozano Dep. at 22:8-23:18 and 25:21-28:16.
[16] Lozano Dep at 23:5-24:6
[17] Lozano Dep at 17:12-18.
[18] Lozano Dep. at 40:6-41:8.
[19] Lozano Dep. at 34:2-19; Silvagnoli Dec. at ¶ 10, fn 1.

Plaintiff did not report to the same supervisor as Plaintiff.[20] During the entire period at issue in this lawsuit, Schuering was Lozano's only supervisor.[21]

## C.     Plaintiff is Assigned to a Performance Improvement Plan.

Soon after Plaintiff joined the Global Projects Group, Schuering noticed that she had significant difficulty performing her new job duties.[22] For instance, although Plaintiff was able to complete basic data entry and photocopying assignments, these limited skills were insufficient to meet the expectations of her position and she struggled with other important parts of her job.[23] Among other things, Plaintiff often performed work manually instead of using programs designed to make her work product more complete and efficient.[24]   Moreover, Plaintiff failed to pay attention to details regarding her assignments and sometimes forwarded emails intended for a select group of people to large distribution lists that included individuals for whom the information was not intended.[25] Plaintiff's deficiencies in these areas and other areas persisted for some time.[26] As a result, a member of the Company's human resources team met with Plaintiff and Schuering to discuss Plaintiff's performance problems and identify areas where Plaintiff could improve to meet the expectations of her position.[27]   During this process, Mr. Schuering encouraged Plaintiff to find external training courses to help her improve her skills in data entry applications such as Microsoft Excel, and agreed to pay for the courses out of his business unit's education budget.[28]

---

[20] Lozano Dep. at 151:21-152:16
[21] Lozano Dep. at 17:12-18.
[22] Silvagnoli Dec. at ¶ 5.
[23] Silvagnoli Dec. at ¶ 5.
[24] Silvagnoli Dec. at ¶ 5.
[25] Silvagnoli Dec. at ¶ 5.
[26] Silvagnoli Dec. at ¶ 6.
[27] Silvagnoli Dec. at ¶ 6.
[28] Silvagnoli Dec. at ¶ 6.

41212194.1

Unfortunately, Plaintiff did not take advantage of those opportunities and, consequently, her performance continued to suffer.[29] Schuering indicated to Plaintiff numerous times that her lack of attention to detail and poor work product were not meeting the expectations of an employee in her position.[30] Because of Plaintiff's ongoing performance problems, Schuering became hesitant to assign certain tasks to her because he delivered many of his reports and presentations to upper management and he could not rely on her work product.[31] As a result, Schuering resorted to completing the work himself or asking one of the Senior Administrative Assistants in the Group for support.[32]

Because of her performance deficiencies in key areas of her job, Schuering gave Plaintiff "less than successful" performance ratings in 2013 and 2014.[33] Her performance problems continued during the early part of 2015, with Schuering noting numerous issues such as Plaintiff's refusal to take on more challenging assignments and her failure to take initiative to improve her performance.[34]  As a result, on March 10, 2015, Schuering placed Plaintiff on a formal PIP designed to assist her in improving her performance.[35] The PIP outlined the expectations of Plaintiff's position and her specific areas of deficiency.[36] For example, the PIP stated that Plaintiff: (1) lacked initiative to complete more challenging assignments; (2) failed to seek opportunities for professional development; (3) breached confidentiality related to employee performance discussions with managers; and (4) lacked essential competencies for her position.[37]  According to the PIP, Plaintiff was required to develop a detailed improvement plan with target completion

---

[29] Silvagnoli Dec. at ¶ 6.
[30] Silvagnoli Dec. at ¶ 6.
[31] Silvagnoli Dec. at ¶ 6.
[32] Silvagnoli Dec. at ¶ 6.
[33] Silvagnoli Dec. at ¶ 7.
[34] Silvagnoli Dec. at ¶ 7.
[35] Silvagnoli Dec. at ¶ 7; *see also* Lozano's Performance Improvement Plan, attached as Exhibit C.
[36] *See* PIP Exhibit C at pp.2-3
[37] *Id.*

dates.[38] Lyondell committed substantial resources to ensure Plaintiff had every opportunity to seek support and successfully complete her PIP including weekly meetings with her supervisor and bi-weekly meetings with her supervisor and an HR Consultant.[39] Finally, Plaintiff was aware that failure to complete the PIP within the 90-day deadline, by June 12, 2015, might result in disciplinary action including termination of her employment.[40]

Plaintiff was initially unsure how to complete the PIP Action Plan and met with Lyondell's HR Consultant, Angela Silvagnoli ("Silvagnoli"), to get some guidance and discuss proposed actions that would allow her to be successful on her PIP.[41] The PIP Action Plan painstakingly described the individual actions Plaintiff was required to perform by certain target dates to satisfactorily complete her PIP.[42] On April 7, 2015, at Plaintiff's first PIP progress meeting, Plaintiff reported that she had not yet completed the Excel training in the PIP Action Plan.[43] Attempting to assist Plaintiff, Silvagnoli granted Plaintiff a one-week extension to complete the Excel training.[44] Another aspect of Plaintiff's PIP required her to identify and get involved with more challenging projects.[45] However, Plaintiff failed to timely identify any additional projects before the target meeting and, as a result, was assigned two additional tasks to meet that requirement of her PIP.[46] Importantly, Plaintiff never indicated during this PIP progress meeting that the PIP treated her unfairly compared to other Administrative Assistant III's.[47]

---

[38] *Id.* at p.2
[39] *Id.*
[40] *Id.* at p.3
[41] Lozano PIP Action Plan, attached as Exhibit D.
[42] *Id.*
[43] Silvagnoli Dec. at ¶ 8.
[44] Silvagnoli Dec. at ¶ 8.
[45] Silvagnoli Dec. at ¶ 8.
[46] Silvagnoli Dec. at ¶ 8.
[47] Lozano Dep. at 88:3-16.

On April 21, 2015, Plaintiff met with Silvagnoli again for a regularly scheduled PIP progress meeting and reported that she had started some of her assigned projects but had not completed any of them as required under the PIP.[48] As before, Plaintiff did not make any statements at this PIP progress meeting that the PIP treated her unfairly compared to other Administrative Assistant III's.[49]

On May 8, 2015, Plaintiff met again with Silvagnoli for a regularly scheduled PIP progress meeting and reported that she was still working to complete her assignments.[50] During this meeting, Plaintiff also claimed that her supervisor, Schuering, was discriminating against her based on her age and race.[51] Notably, this is the first time Plaintiff made any allegations that she was the target of race and age discrimination.[52]

**D.     Lyondell Investigates Plaintiff's Claims of Race and Age Discrimination.**

Lyondell immediately initiated an investigation into Plaintiff's specific allegations, which included claims that "asking for assignments is an insult" and that her performance was in question because of her "age and being a minority."[53] Plaintiff did not allege any specific act of discrimination but, instead, alleged a general feeling that the Global Projects Group leaders targeted her for a PIP based on her race and age.[54] According to Plaintiff, she was assigned to perform housekeeping duties "because she is Hispanic."[55]

---

[48] Silvagnoli Dec. at ¶ 9.
[49] Lozano Dep. at 89:2-13
[50] Lozano Dep. at 89:18-90:9; 77:23-78:8; 79:14-80:7; 90:10-18.
[51] Silvagnoli Dec. at ¶ 9.
[52] Silvagnoli Dec. at ¶ 9. Strangely, despite contrary allegations in her Complaint, Plaintiff testified under oath during her deposition that she does not recall ever claiming during her employment that Schuering and/or others in the Global Projects Group were discriminating against her based on her race or age. *Compare* Dkt No. 1 at ¶ 17; Dkt. No. 1 at ¶ 18 and Lozano Dep. at 99:16-20.
[53] Silvagnoli Dec. at ¶ 10.
[54] Silvagnoli Dec. at ¶ 10.
[55] Silvagnoli Dec. at ¶ 10.

8

Lyondell interviewed a number of individuals regarding Plaintiff's allegations of harassment and discrimination between May 21, 2015 and June 4, 2015.[56] Lyondell's investigation did not find any evidence to support Plaintiff's claims of discrimination.[57] To the contrary, Lyondell's investigation confirmed that Plaintiff was directed to order supplies for the coffee area and coordinate services with other departments including IT, Facilities and third party vendors – all tasks which fell within her job duties as an Administrative Assistant.[58] Lyondell's investigation also confirmed that other leaders in the Global Projects Group assigned work to the Senior Administrative Assistants[59] because of Plaintiff's poor performance on previous assignments and their general lack of trust in her work product.[60] Lyondell ultimately determined that Plaintiff's allegations of race and age discrimination were unfounded and closed its investigation.[61] Before Lyondell could inform Plaintiff of the results of its investigation into her allegations, she took a medical leave of absence.[62]

**E.     Lyondell Accommodates Plaintiff's Absence and Extends the PIP.**

On or about June 2, 2018, Plaintiff took a one week vacation and the Company agreed to delay her planned PIP progress meeting to accommodate her time away from work.[63] Before leaving on vacation, Plaintiff reported, as she had previously, that she had not completed any new assignments and that she was still working towards completing two of the assigned projects described in her PIP.[64] Additionally, Plaintiff had still failed to identify a third project that would

---

[56] Silvagnoli Dec. at ¶ 10.
[57] Silvagnoli Dec. at ¶ 10.
[58] Silvagnoli Dec. at ¶ 10.
[59] The Senior Administrative Assistants that also worked in the Global Projects Group are both in the same protected class as Plaintiff based on their age (46 and 61 at the time of the alleged discrimination) and one is in the same protected class based on race (Hispanic).
[60] Silvagnoli Dec. at ¶ 10.
[61] Silvagnoli Dec. at ¶ 10.
[62] Silvagnoli Dec. at ¶ 10.
[63] Silvagnoli Dec. at ¶ 11.
[64] Silvagnoli Dec. at ¶ 11.

demonstrate improved technical skills.[65] Although the PIP was scheduled to end on June 12, 2015, Lyondell extended the deadline to June 19, 2015 to accommodate Plaintiff's week of vacation.[66]

Shortly after Plaintiff returned from vacation, and just before her first PIP extension deadline, she took a medical leave of absence.[67] Plaintiff remained out on approved medical leave from June 16, 2015 until August 17, 2015.[68]  Before leaving for her approved FMLA leave, Plaintiff still had a number of items to complete on her PIP Action Plan, including identifying projects to demonstrate her improved technical skills and tracking of employee timesheets.[69] Upon her return from medical leave, Plaintiff resumed her PIP progress meetings on August 20, 2015 and received additional opportunities to complete the tasks in her PIP Action Plan.[70] On August 26, 2015, during a PIP progress meeting, Lyondell informed Plaintiff of the results of its investigation into her allegations of discrimination.[71] On August 28, 2015, Lyondell informed Plaintiff that it would extend her deadline to complete the PIP Action Plan until September 4, 2015.[72]

Despite ample support from the Company and numerous extensions of her deadlines, Plaintiff repeatedly failed to take the appropriate steps to improve her performance during the PIP, including after she returned from medical leave.[73] Although Plaintiff completed some of the assignments in the PIP Action Plan, she never incorporated the new technical skills she learned during the PIP to her everyday work habits.[74] For instance, instead of using the data management

---

[65] Silvagnoli Dec. at ¶ 11.
[66] Silvagnoli Dec. at ¶ 11.
[67] Silvagnoli Dec. at ¶ 12.
[68] Silvagnoli Dec. at ¶ 12.
[69] Silvagnoli Dec. at ¶ 12.
[70] Silvagnoli Dec. at ¶ 12.
[71] Silvagnoli Dec. at ¶ 12.
[72] Silvagnoli Dec. at ¶ 12.
[73] Silvagnoli Dec. at ¶ 13.
[74] Silvagnoli Dec. at ¶ 13.

41212194.1

tools to her advantage, Plaintiff continued to rely on manual entry which resulted in poor work product and untimely submissions.[75] Indeed, Plaintiff consistently failed to acknowledge that she needed to improve her performance and she never showed the necessary commitment to sustained improvement.[76] As a result, Lyondell terminated Plaintiff's employment on September 4, 2015.[77]

## F.     During her Deposition, Plaintiff Fails to Identify any Specific Instances of Alleged Discrimination

Plaintiff's deposition testimony highlights the sheer lack of evidence of discrimination in this matter. For instance, Plaintiff testified in her deposition that she believes Schuering discriminated against her but she could not identify or recall a single incident where he allegedly did so.[78] Although Plaintiff testified that up to three individuals allegedly witnessed Schuering treat her less favorably than younger non-Hispanic workers, she could not identify a single incident when any such alleged discrimination occurred.[79]

In regards to her age discrimination claim, Plaintiff testified that a contract worker who reported to a different supervisor and had some overlapping job duties was treated more favorably than her based on her age, but she again could not articulate a basis for that contention.[80] In fact, Plaintiff did not have any information about this contract worker, including any evidence of the person's actual age.[81]  Similarly, with respect to her race discrimination claim, Plaintiff claims that a non-Hispanic contract worker was treated more favorably, but she could not offer any specific evidence in support of that contention.[82]

---

[75] Silvagnoli Dec. at ¶ 13.
[76] Silvagnoli Dec. at ¶ 13.
[77] Silvagnoli Dec. at ¶ 13.
[78] Lozano Dep at 112:20-113:2.
[79] Lozano Dep. at 113:3-115:25.
[80] Lozano Dep. at 117:18-120:8.
[81] Lozano Dep. at 117:18-120:8.
[82] Lozano Dep. at 121:2-123:24.

Finally, Plaintiff also testified that one of the Senior Administrative Assistants, Estela Ponce ("Ponce"), who is also Hispanic and was 46 years old at the time in question, was treated more favorably than Plaintiff when Ponce was a contract worker.[83] The sole basis of this allegation, however, is Plaintiff's claim that Ponce could selectively delegate certain assignments to Plaintiff, such as performing print jobs and assembling binders.[84]  She did not have any specific evidence of anyone treating Ponce more favorably than Plaintiff was treated.

## G.      Plaintiff Spoliates Potentially Relevant Evidence on the Eve of Her Deposition.

Plaintiff admitted during her deposition that she intentionally destroyed records related to her employment at Lyondell.  In particular, Plaintiff admitted that the night before her deposition – after Lyondell had already asked her to produce documents in her possession related to her employment at the Company – she located notes and other records related to her employment and, rather than produce them in accordance with her discovery obligations, selected certain notes/records to keep and copy and decided to shred the other notes/records.[85]  Among the notes Plaintiff decided to keep/copy were entries about an alleged incident involving a conversation between Schuering and a former Lyondell employee regarding Plaintiff.[86] According to Plaintiff, she copied notes about this alleged conversation from one notebook to another notebook because she "wanted to remember" it, and then proceeded to shred the original notebook along with a host of other potentially relevant information related to her employment at the Company.[87] Whatever

---

[83] Lozano Dep. at 145:2-14 (Stating that the Senior Administrative Assistant had more privileges than her as a contract employee including the use of her phone and vehicle.)
[84] Lozano Dep. at 145:24-147:13 (Plaintiff testifying that Ponce would bring in a manual and tell Lozano "we need ten copies." Lozano Dep. at 146:20-147:5.)
[85] Lozano Dep. at 85:5-187:8.
[86] Lozano Dep. at 183:20-187:8.
[87] Lozano Dep. at 183:20-187:8.

12

information the original notes and notebook contained is now lost forever, along with all the other

information Plaintiff decided to destroy the night before her deposition.[88]

## V.      STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the evidence in the light most favorable

to the non-movant, the record shows that there is no genuine issue of material fact and that the

movant is entitled to judgment as a matter of law.[89] "Importantly, 'the mere existence of *some*

factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact

dispute be genuine and material.'"[90] Facts are material when the resolution of those facts "might

affect the outcome of the suit under the governing law . . . ."[91] A plaintiff's unsubstantiated

opinions and beliefs are not competent summary judgment evidence.[92] Similarly, "[c]onclusory

allegations and denials, speculation, [and] improbable inferences . . ." are not sufficient to defeat

summary judgment.[93]  In other words, to survive a defendant's motion for summary judgment the

plaintiff must produce specific evidence upon which a jury could reasonably base a verdict in her

favor on the claims asserted.[94]

If a plaintiff fails to show a genuine issue of material fact on an essential element of her

claims, summary judgment in the defendant's favor is warranted.[95] As described in detail below,

Lyondell is entitled to summary judgment on all claims because Plaintiff cannot meet this burden

on any of her claims against it.

---

[88] Lozano Dep. at 187:4-8.
[89] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986); FED. R. CIV. P. 56(a).
[90] *Obasogie v. Harris Cty. Hosp. Dist.*, 2013 WL 6916246, at *2 (S.D. Tex. Dec. 31, 2013)(quoting *Willis v. Roche Biomed. Labs.*, 61 F.3d 313, 315 (5th Cir. 1995))(emphasis added).
[91] *Willis v. Roche Biomed. Labs.*, 61 F.3d 313, 315 (5th Cir. 1995).
[92] *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).
[93] *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).
[94] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).
[95] *Celotex*, 477 U.S. at 322.

## VI.    ARGUMENTS AND AUTHORITIES

**A.    Plaintiff's Title VII, TCHRA and Section 1981 Race Claims Fail as a Matter of Law.**

To establish race discrimination, Plaintiff ultimately must establish that race was a motivating factor in Lyondell's decision to terminate her employment.[96]  In the absence of direct evidence of discrimination, Plaintiff must establish her race discrimination claim by circumstantial evidence using the three-part "modified *McDonnell Douglas* approach."[97] Under this framework, Plaintiff must first establish a prima facie case of race discrimination.[98] If Plaintiff makes a prima facie case, the burden then shifts to Lyondell to articulate a legitimate nondiscriminatory reason for the adverse employment action it took against Plaintiff.[99] Lyondell's burden in this second stage is one of production, not persuasion.[100] Once Lyondell articulates a legitimate nondiscriminatory reason, the burden shifts back to Plaintiff to prove pretext.[101] Throughout this entire process, the ultimate burden of persuasion remains with Plaintiff.[102]

### 1.    Plaintiff Cannot Make a Prima Facie Case of Discrimination.

To establish a prima facie case of race discrimination, Plaintiff must show that she: (1) was a member of a protected class; (2) was qualified for the position in question; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees under nearly identical circumstances.[103]

#### a.    The Only Adverse Employment Action at Issue is Plaintiff's Termination.

---

[96] *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).
[97] *Id.*; *Chamblee v. Miss. Farm Bureau Fed'n*, 551 Fed. Appx. 757 (5th Cir. 2014).
[98] *Moss v. BMC Software*, 610 F.3d 917, 922 (5th Cir 2010).
[99] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, (1993). *Moss*, 610 F.3d at 922.
[100] *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).
[101] *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012).
[102] *See Reed*, 701 F.3d at 439; *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000).
[103] *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

"Not everything that makes an employee unhappy is actionable as an adverse employment action."[104] To be actionable, the conduct at issue must be an "ultimate" employment decision that involves "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"[105] Routine disciplinary matters such as written warnings or placing an employee on a performance improvement plan are not "ultimate" employment actions and, therefore, do not qualify as adverse employment actions for purposes of race discrimination claims.[106]

Plaintiff complains of a number of alleged adverse employment actions in this case that do not support her burden at the prima facie stage. For example, Plaintiff alleges that Schuering discriminated against her based on her race when he allegedly told her that she is "really good for meals."[107] Additionally, Plaintiff alleges that she was singled out for a performance improvement plan based on her race. However, neither praising Plaintiff for coordinating lunch meetings, which was one of Plaintiff's enumerated job duties as an Administrative Assistant III, nor placing Plaintiff on a PIP to maximize her opportunities for improved performance qualifies as an adverse employment action for her race discrimination claim because neither involves an ultimate employment decision. Accordingly, to the extent Plaintiff relies on any of these alleged events as an adverse action, her race discrimination claims under Title VII, the TCHRA and Section 1981 fail as a matter of law.

---

[104] *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 535 (S.D. Tex. 1999).

[105] *Agoh v. Hyatt Corp.*, 992 F.Supp. 2d 722, 732 (S.D. Tex. 2014); *see also Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875, 878 (5th Cir. 1999) ("Title VII was only designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.").

[106] *Turner v. Novartis Pharm. Corp.*, 442 Fed. Appx. 139, 141 (5th Cir. 2011) (unpublished) (placing employee on performance improvement plan is not an ultimate employment decision); *Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971, 981 (E.D. Tex. 2004).

[107] *See* Dkt. No. 1 at ¶ 15.

**b.**     **Plaintiff Cannot Establish That Lyondell Treated Her Less Favorably Than Similarly Situated Employees Under Nearly Identical Circumstances.**

To establish the fourth element of her prima facie case for race discrimination, Plaintiff must show that there are similarly situated employees outside of her protected class who were treated more favorably under nearly identical circumstances.[108] In the Fifth Circuit, the "nearly identical" standard is a stringent one; that is, the comparator employees must have the same job or responsibilities, share the same supervisor, and have the same capabilities, comparable work rule violations and essentially the same disciplinary record.[109]

In connection with her race discrimination claim, Plaintiff testified that one unidentified, non-Hispanic individual was allegedly treated more favorably than Plaintiff.  However, Plaintiff could not remember the individual's name or any details about the manner in which that individual was allegedly treated more favorably.  Moreover, Plaintiff admitted that she and this alleged unidentified individual had different job duties (despite the fact that they both performed "office work" that may have overlapped) and a different supervisor.  On this record, Plaintiff clearly cannot establish that this unidentified contract worker, who had varying job duties and reported to a different supervisor, was similarly situated to Plaintiff.[110] Indeed, Plaintiff is unable to point to a single incident where this unidentifiable individual was ever treated better than Plaintiff under nearly identical circumstances.  As a result, Plaintiff cannot establish this crucial prima facie element of her race discrimination claim and the claim fails as a matter of law.

**2.**     **Lyondell Terminated Plaintiff for a Legitimate Nondiscriminatory Reason.**

---

[108] *Lee v. Kansas City Southern Ry*, 574 F.3d 253, 259-260 (5th Cir. 2009).

[109] *Id. see also Heggemeier v. Caldwell Cty.*, 826 F.3d 861, 868 (5th Cir. 2016).

[110] Plaintiff also testified in her deposition that Ponce was treated more favorably than her. However, Plaintiff clearly cannot compare herself to Ponce because Ponce, at the time in question was in the same protected class based on age (46) and also in the same protected class based on race (Hispanic). Additionally, Plaintiff admitted that Ponce had a different job title, reported to a different supervisor and performed different job duties.

Even if Plaintiff can establish a prima facie case of race discrimination under Title VII, the TCHRA or Section 1981, her claims still fail because Lyondell had a legitimate nondiscriminatory reason for terminating her employment. Specifically, Plaintiff received less than successful performance ratings for two consecutive years – 2013 and 2014 – leading up to her termination. As a result of Plaintiff's less than successful performance ratings, Lyondell placed Plaintiff on a PIP designed to target areas for her improvement. Lyondell bent over backwards to accommodate Plaintiff – working with Plaintiff to identify specific ways to improve her performance, offering to pay for outside training to help her improve critical technical skills needed for her role as an Administrative Assistant III, and extending the PIP on multiple occasions for a total of nearly three months to allow Plaintiff adequate time to improve.  Unfortunately, Plaintiff did not improve and, as a result, Lyondell terminated her employment based on her poor performance. Courts have consistently held that poor performance is a legitimate, nondiscriminatory reason for termination.[111] As the summary judgment record shows, Lyondell's decision to terminate Plaintiff's employment had nothing at all to do with her race and was legitimate and nondiscriminatory in all respects.[112]

### 3.      Plaintiff Cannot Show that Lyondell's Reason for Terminating Her Employment was Pretext for Discrimination.

Because Lyondell has articulated a legitimate nondiscriminatory reason for its action, Plaintiff can only avoid summary judgment if she produces evidence showing pretext. To establish pretext, Plaintiff must show that Lyondell's reason is false or "unworthy of credence" and

---

[111] *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason."); *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015).
[112] *Cox v. Univ. of Texas MD Anderson Cancer Ctr.*, 2010 WL 3825411, at *3 (S.D. Tex. Sept. 28, 2010)(Employer's decision to terminate an employee for failure to maintain performance standards is a legitimate reason to support the termination.)

17

motivated by discrimination.[113] To meet this burden, Plaintiff cannot rely on unsubstantiated opinions and beliefs but instead "must produce *substantial* evidence of pretext."[114] As described below, Plaintiff cannot meet this burden.

There is no credible summary judgment evidence that Lyondell's reason for terminating Plaintiff's employment is false or not credible. Rather, the summary judgment records shows that Plaintiff had a consistent and repeated history of performance problems, including less than favorable reviews in 2013 and 2014 and a failure to improve during the PIP process. Plaintiff has not offered any information that could refute this evidence – because there is none. Indeed, Plaintiff herself testified that there was nothing unfair or discriminatory about the PIP nor did she ever make any reports in that regard. Indeed, Plaintiff admitted that she never once reported that the PIP treated her less favorably than other similarly situated employees. While Plaintiff clearly disagrees with the Company's decision, she must produce more than her general disagreement in order to show pretext.[115]

As previously described, Lyondell bent over backwards to provide Plaintiff with opportunities to improve her performance. Lyondell extended the PIP timeline twice to allow Plaintiff additional time to show measured improvement. Lyondell also gave Plaintiff multiple opportunities to finish tasks that were specifically identified in her PIP, which she repeatedly failed to complete in a timely manner. In light of these facts, there is simply no basis to argue or conclude that Lyondell's reason for terminating Plaintiff's employment was false or unworthy of credence

---

[113] *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011); *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001)).

[114] *Auguster v. Vermillion. Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001)(emphasis added).

[115] *Cox*, 2010 WL 3825411 at 3. Further, there is no credible summary judgment evidence that Lyondell's decision to place Plaintiff on a PIP and terminate her employment when her performance did not improve was motivated by race or any other illegal basis for that matter. To the extent Plaintiff argues that the PIP was an ultimate employment decision, which it is not, there is also no summary judgment evidence showing pretext related to Lyondell's decision to place Plaintiff on a PIP.

18

in this case.  Accordingly, Plaintiff cannot show pretext and her race discrimination claims fail as a matter of law.

**B.      Plaintiff's ADEA and TCHRA Age Claims Fail as a Matter of Law.**

Plaintiff's age discrimination claims under the ADEA and TCHRA are also doomed. To establish age discrimination, Plaintiff must ultimately show that age was the "but for" cause of or a motivating factor in Lyondell's decision to terminate her employment.[116]  Absent direct evidence of age discrimination, as is the case here, Plaintiff must prove her claim by circumstantial evidence using the same *McDonnell Douglas* burden shifting approach.[117]

**1.      Plaintiff Cannot Make a Prima Facie Showing Under the ADEA or TCHRA.**

To make a prima facie case of age discrimination, Lozano must show that (1) she was a member of a protected class, *i.e.*, 40 years of age or older; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) she "was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age."[118]

Plaintiff's age discrimination case fails at this first stage because she cannot prove that she was replaced by a younger worker or otherwise terminated because of her age. First, Plaintiff does not allege that she was replaced at all, let alone by a younger worker outside her protected class. Second, Plaintiff has not offered any evidence showing that her age was the "but for" reason or a motivating factor for any decision the Company made.[119]  Accordingly, even assuming Plaintiff

---

[116] As explained in more detail below, these different standards apply to Plaintiff's age discrimination claims under the ADEA and the TCHRA.  Regardless of the standard applied, Plaintiff's claim fails as a matter of law.

[117] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

[118] *Jackson v. Cal-W Packaging Corp.,* 602 F.3d 374, 378 (5th Cir. 2010)(quoting *Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 349 (5th Cir. 2007).

[119] Lyondell also addresses the "but for" and motivating factor elements below in the pretext section related to this claim.

can establish the other elements of her prima facie case, her age discrimination claim still fails at this early stage because she does not have evidence supporting these other critical elements.

**2.    Assuming Plaintiff Makes a Prima Facie Case, Lyondell had a Legitimate Nondiscriminatory Reason for Her Termination and Plaintiff Cannot Show Pretext.**

Even if Plaintiff establishes a prima facie case under the ADEA or the TCHRA, her age discrimination claim still fails as a matter of law because Lyondell terminated her employment for legitimate nondiscriminatory reasons completely unrelated to her age. In particular, the summary judgment record shows that Plaintiff received less than successful performance reviews in two consecutive years and failed to show measurable improvement when placed on a PIP, even after receiving multiple extensions and other opportunities to improve her performance.   As with Plaintiff's race discrimination claims, Courts have consistently held that poor performance is a legitimate, nondiscriminatory reason for termination.[120]

In light of Lyondell's assertion of a legitimate nondiscriminatory reason for Plaintiff's termination, the burden shifts back to Plaintiff to make an "ultimate showing of intentional discrimination."[121] Notably, Plaintiff's burden at this phase is different under the ADEA and the TCHRA.  Under the ADEA, Plaintiff must prove that age was the "but for" cause of the Company's actions, while under the TCHRA Plaintiff must show that age was a "motivating factor" in Lyondell's decision.[122]   Regardless of which standard is applied, Plaintiff cannot meet her burden here.

Under the ADEA, Plaintiff can show pretext by presenting summary judgment evidence of disparate treatment or by showing "that the employer's proffered explanation is false or 'unworthy

---

[120] *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).
[121] *Reed*, 701 F.3d at 439.
[122] *Id.* at 440. *see also Moss*, 610 F.3d at 922; *see also Reed*, 701 F.3d at 440.

of credence.'"[123] Plainly, Plaintiff's Complaint forecloses her ability to make claims under the ADEA because she alleges multiple forms of discrimination including race discrimination, age discrimination and FMLA retaliation. Clearly, age cannot be the "but for" cause of her termination when she also alleges that numerous other factors allegedly motivated the Company's decision to terminate her employment.  Similarly, there is no evidence that Plaintiff's age was a motivating factor in the Company's termination decision or any other alleged adverse action, as required under the TCHRA.[124] Indeed, Plaintiff cannot point to a single incident in which any alleged discrimination occurred, and instead relies on pure speculation to advance her claims.  But this is insufficient to show pretext and support her claims beyond summary judgment.  Accordingly, Plaintiff's age discrimination claims under the ADEA and the TCHRA fail as a matter of law.

## C.    Plaintiff's FMLA Retaliation Claims Fail as a Matter of Law.

To establish a prima facie claim for FMLA retaliation, Plaintiff must prove that: (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA.[125] Absent direct evidence of discriminatory intent, as is the case here, courts apply the *McDonnell-Douglas* burden shifting scheme to evaluate whether an employer discharged its employee for "participating in FMLA-protected activities."[126]

### 1.    Plaintiff Cannot Establish a Prima Facie Case of Retaliation Under the FMLA.

Plaintiff does not have any summary judgment evidence that supports or establishes the third prong of her prima facie case for FMLA retaliation. Specifically, Plaintiff cannot establish a

---

[123] *Moss*, 610 F.3d at 922.
[124] *Reed*, 701 F.3d at 439.
[125] *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017).
[126] *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

causal connection between her taking FMLA leave and her discharge.[127] As described in detail, Plaintiff received less than successful performance reviews for two consecutive years, was assigned to a PIP, *was approved for FMLA leave while assigned to the PIP*, and was given ample opportunity to complete her PIP Action Plan and improve her performance. Plaintiff's unsupported and self-serving allegations in the Complaint that "Defendant told Plaintiff that due to Plaintiff being out on FMLA leave, Plaintiff's performance had not improved" is insufficient summary judgment evidence to establish a prima facie case of retaliation.[128] Indeed, there is no other evidence supporting this self-serving statement and the summary judgment record clearly shows that the Company provided Plaintiff additional time to complete her PIP – both before and after her medical leave.  Accordingly, there is no genuine issue of any material fact on any of the elements of Plaintiff's prima facie case of FMLA retaliation and the Court should dismiss it in its entirety.

> **2.    Even if Plaintiff Makes a Prima Facie Case, Lyondell had a Legitimate Non-Retaliatory Reason for the Termination and Plaintiff Cannot Show Pretext.**

Assuming a plaintiff establishes a prima facie case of FMLA retaliation, the *McDonnell-Douglas* burden shifting framework requires that Plaintiff show that Lyondell's legitimate basis for her termination is pretext for unlawful retaliation.[129] In order to establish pretext here, Plaintiff must either show directly "that a discriminatory reason motivated management" or indirectly "that the reasons given . . . are simply not believable."[130]

---

[127] *Acker*, 853 F.3d 786-89 (Plaintiff violated his employer's unexcused absence policy on multiple occasions, was still allowed to take FMLA leave when properly requested and, as a result, failed to establish a causal connection to his periods of unpaid suspension based on his violations of the employer's unexcused absence policy.)

[128] *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010)(stating generally that self-serving statements are insufficient to overcome summary judgment in the face of overwhelming evidence to the contrary.)

[129] *Francisco v. Sw. Bell Tel. Co.*, 2016 WL 3974820, at *8 (S.D. Tex. July 25, 2016), *on reconsideration in part*, 2016 WL 4376610 (S.D. Tex. Aug. 17, 2016), *appeal dismissed*, 2017 WL 6398010 (5th Cir. Jan. 5, 2017)

[130] *Id.* at *9.

41212194.1

As stated throughout this Motion, Lyondell had a legitimate non-retaliatory reason for Plaintiff's termination – namely, her ongoing performance issues, which were reflected in her 2013 and 2014 performance evaluations and in her PIP in 2015.   These performance issues clearly pre-dated Plaintiff's request for medical leave and, therefore, could not have factored into the Company's decisions when it evaluated Plaintiff or developed the PIP for her improvement. Moreover, the summary judgment record shows that the Company approved Plaintiff's request for medical leave and, upon her return, provided her additional time to complete the PIP that was pending before she went out on leave.  Plaintiff has not offered any evidence that the Company treated employees who did not take FMLA leave more favorably than it treated her, or that otherwise raises questions about the credibility of Lyondell's proffered reason for its decision to terminate her employment.   Instead, Plaintiff only alleges that the decision to terminate her employment was somehow connected to her taking FMLA leave, even though she does not point to any specific evidence supporting this contention. Plaintiff cannot survive summary judgment with "weak fact issues," however, and she must show that Lyondell's legitimate reason – consecutive "less than successful" performance reviews and lack of improvement during the PIP process – is not the real reason for the termination.[131]   As the summary judgment record shows, Lyondell's decision to terminate Plaintiff's employment had nothing at all to do with Plaintiff's FMLA leave, or any other protected activity for that matter, and there is no basis for her claim of retaliation in this case. Accordingly, Plaintiff's FMLA retaliation claims should also fail as a matter of law.

**D.      The Court Should Dismiss Plaintiff's Claims as a Sanction for Spoliation of Evidence.**

---

[131] *Id.*

"Spoliation is 'the destruction or the significant and meaningful alteration of evidence.'"[132] "[A] terminating sanction is justified in only the most egregious cases, such as where a party has engaged in perjury, tampering with evidence, or ***intentionally destroying evidence by*** burning, ***shredding***, or wiping out [evidence]."[133] A party seeking sanctions for spoliation must show that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.[134]

There is more than sufficient evidence of Plaintiff's spoliation of evidence in this case. First, Plaintiff clearly had control over the destroyed evidence and had a duty to preserve the information. Plaintiff testified that she kept voluminous notes during her employment which she retained after her employment. These records were in Plaintiff's possession for at least three years and during the entire period of this lawsuit until the night before Plaintiff's deposition when she decided to destroy the records. Moreover, during discovery, Lyondell specifically requested the production of various documents related to Plaintiff's employment at the Company, including any notes and or diaries containing information relevant to Plaintiff's claims, which clearly alerted Plaintiff to the importance of the destroyed records and their potential relevance to this case (assuming she was not already aware of that fact).

Second, there is ample evidence that Plaintiff destroyed the evidence with a culpable state of mind and that the evidence was relevant to the claims in this case. Plaintiff admitted that the notes and information she destroyed related to her employment at Lyondell. In addition, she

---

[132] *Hammad v. Dynamo Stadium, LLC*, 2015 WL 6965215, at *16 (S.D. Tex. Nov. 10, 2015)(citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 612 (S.D.Tex.2010)).
[133] *Quantlab Techs. Ltd. (BGI) v. Godlevsky*, 2014 WL 651944, at *9 (S.D. Tex. Feb. 19, 2014)(emphasis added).
[134] *Id.*

24

confirmed that she was aware that Lyondell requested the production of various materials related to her employment at the Company, which would have included the notes she ultimately destroyed. Moreover, in addition to Plaintiff wrongfully withholding relevant information that should have been produced with the rest of her discovery responses, Plaintiff testified that after reviewing the information to prepare for her deposition she decided to copy and preserve only certain portions of the notes and proceeded to destroy the remaining information by shredding them. In other words, Plaintiff unilaterally decided which portions of the evidence to keep/copy and which to destroy – leaving Lyondell no ability at all to assess the information for its probative value in this case.

Based on this record, sanctions for Plaintiff's intentional spoliation of relevant evidence is clearly warranted.  Accordingly, Lyondell requests that the Court dismiss Plaintiff's claims in their entirety, with prejudice, as a sanction for her bad faith spoliation of evidence.[135]

## VII.   CONCLUSION

Defendant Lyondell Chemical Company respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff Linda Lozano's claims in their entirety, with prejudice and for all other relief to which it is justly entitled.

*[Signature block on following page.]*

---

[135] In the event the Court does not dismiss Plaintiff's claims for spoliation or on any other grounds, Lyondell respectfully reserves the right to seek an adverse inference instruction and other available relief for Plaintiff's spoliation of evidence.

41212194.1

Respectfully submitted,

**EVERSHEDS-SUTHERLAND (US), LLP**

By: */s/ Marlene C. Williams*
    Marlene C. Williams
    Attorney-in-Charge
    Fed. ID No. 22824
    State Bar No. 24001872
    1001 Fannin, Suite 3700
    Houston, TX 77002
    Telephone: (713) 470-6100
    Facsimile: (713) 654-1301
    MarleneWilliams@eversheds-sutherland.com

OF COUNSEL
Scott R. McLaughlin
Fed. ID No. 18138
State Bar No. 00791234
John T. Hays
Fed. ID No. 3015861
State Bar No. 24101885
1001 Fannin, Suite 3700
Houston, TX 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301
ScottMcLaughlin@eversheds-sutherland.com
JohnHays@eversheds-sutherland.com

**ATTORNEYS FOR DEFENDANT
LYONDELL CHEMICAL COMPANY**

## CERTIFICATE OF SERVICE

    This is to certify that on November 26, 2018 a true and correct copy of the foregoing document was served electronically through the Court's ECF System to all parties of record.

                          */s/ John T. Hays*
                          John T. Hays

41212194.1